FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

DEC 29 2010

JAMES N. HATTEN, CLERK
By: Deputy Clerk

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| ROBERTA CABAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:10-CV-4225 |
| | ) | |
| DELTA AIR LINES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**

Plaintiff Roberta Caban files this Complaint to recover for discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, in support of which she shows this Court as follows:

**Parties, Jurisdiction & Venue**

1.

Plaintiff Roberta Caban is a resident of Fulton County, Georgia, and submits herself to the jurisdiction of this Court.

2.

Ms. Caban is an employee of Defendant Delta Air Lines, Inc. (hereafter "Delta"), within the meaning of 42 U.S.C. § 2000e(f).

3.

Defendant Delta is a Delaware corporation with principal office address in Fulton County at P.O. Box 45852, Atlanta, GA 30320. Upon information and belief, Delta maintains its principal place of business in Fulton County located at 1030 Delta Blvd., Atlanta, GA 30354. Defendant Delta is a person within the meaning of 42 U.S.C. § 2000e(a).

4.

Defendant Delta is an airline company that operates for profit. Delta is engaged in commerce within the meaning of 42 U.S.C. § 2000e(g).

5.

Upon information and belief, Delta employs more than 75,000 employees. Delta is an employer within the meaning of 42 U.S.C. § 2000e(b).

6.

Defendant Delta may be held responsible for the acts and omissions of its employees made within the course and scope of their employment, under the doctrine of *respondeat superior*.

7.

The Defendant is subject to the jurisdiction of this Court because Delta is a resident of Georgia, where its principal place of business is located.

8.

This Court has jurisdiction over the subject matter of this case under 28 U.S.C. § 1331 because the Plaintiff's discrimination and retaliation claims arise under the laws of the United States.

9.

Venue is proper under 28 U.S.C. § 1391. A substantial part of the events or omissions giving rise to this claim occurred in Atlanta within the Northern District of Georgia. *See id.* at § 1391(b)(2). Additionally, Defendant Delta's contacts would be sufficient to subject it to personal jurisdiction in the Northern District of Georgia. *See id.* at § 1391(c).

**Facts**

10.

On or about March 20, 2008, Plaintiff Roberta Caban was employed by Delta as a "language of destination" flight attendant on a flight from Atlanta, Georgia, to Sao Paulo, Brazil.

11.

During that flight, lead flight attendant Cheryl Euler forcibly grabbed and twisted Ms. Caban's arm, causing redness and swelling that eventually turned into a bruise.

12.

On or about March 21, 2008, when Ms. Caban returned to Atlanta, she reported the details of the incident to Delta managers and told them she believed Ms. Euler was discriminating against her based upon Ms. Caban's national origin, ethnicity, and position as a "language of destination" flight attendant. As instructed, Ms. Caban wrote separate incident reports for the assault and discrimination aspects of her complaint.

13.

At that time, Ms. Caban also showed the managers the bruise on her arm.

14.

That same day, a Delta manager called Ms. Caban and told her that Ms. Euler admitted she grabbed Ms. Caban's arm, but that Ms. Caban was suspended without pay pending further investigation.

15.

After Ms. Caban's calls to management went unanswered, a Delta pilot went to Ms. Caban's home to discuss the employment issue. When he arrived, the Delta pilot told Ms. Caban that he had called a chief pilot and an attorney about her suspension problem.

16.

That evening, the Delta pilot caused Roberta Caban to ingest gamma hydroxybutyrate (GHB), also known as the "date rape drug." Under the pretense of helping Ms. Caban with her employment problem, the Delta pilot engaged in sexual intercourse with Roberta Caban while she was intoxicated from GHB and unable to resist his advances.

17.

Ms. Caban anonymously reported the pilot to the Delta ethics hotline.

18.

Ms. Caban also reported the pilot to the police.

19.

Delta subsequently discovered that Ms. Caban had reported a sexual assault by the Delta pilot and that a criminal investigation was being conducted. Upon information and belief, Delta failed or refused to cooperate with the investigation of the pilot.

20.

Delta's noncooperation prevented Ms. Caban from seeing her perpetrator brought to justice, which also injured Ms. Caban's reputation and credibility.

21.

Ms. Caban was reinstated to work on April 1, 2008.

22.

Upon information and belief, Cheryl Euler spread rumors about Roberta Caban to other Delta employees, including but not limited to a reference to Ms. Caban as "the Latino bipolar girl who likes to write people up."

23.

Ms. Euler's friend, coworker Maria Brito, later chased Ms. Caban around the galley of a plane. Ms. Brito said to Ms. Caban, "I'm not Cheryl Euler – you're not going to say I hit you. You're just a 'Spic' who learned Portuguese."

24.

Roberta Caban reported the problems with Ms. Euler and Ms. Brito to her supervisors. The in-flight supervisor told Ms. Caban not to report the slur to the Equal Opportunity department at Delta.

25.

Ms. Caban filed charges of discrimination with the Equal Employment Opportunity Commission (Charge No. 410200901385).

26.

Ms. Caban developed hives and was diagnosed with post-traumatic stress disorder by a physician in the Delta network. From January, 2009, until March, 2009, Ms. Caban was "grounded" for reasons of disability.

27.

After she returned to work in April, 2009, Ms. Caban removed herself from international flights to avoid the harassment that went unaddressed by Delta. As a result, Ms. Caban experienced a significant decrease in earnings.

28.

Ms. Caban also complained to management that she felt a particular Delta safety video portrayed her in a stereotypical "Latin maid" role and requested that she be removed from the video. As recently as October, 2009, Delta employee Chris Babb called Ms. Caban a "crazy woman."

29.

Ms. Caban filed amended discrimination charges with the EEOC (Charge No. 410201004331).

30.

The problems with Delta management continued. On or about December 12, 2009, Delta failed to provide Ms. Caban transportation to her accommodations

and back to her airport duty report location, causing her to be tardy checking in. She was blamed and verbally reprimanded for her tardiness.

31.

Throughout December, 2009, and January, 2010, Ms. Caban experienced numerous problems with A-Day scheduling, crew tracking, and transportation, problems that were out of the ordinary. Ms. Caban reported these to Delta, but management did not respond.

32.

On or about January 16, 2010, Delta on-board leaders Susanne Drzymala and Rebecca Lingerfelt made derogatory comments about Spanish speakers. Ms. Caban submitted a complaint to Delta, but management did not respond.

33.

On or about February 20, 2010, on-board leader Cherylann Shaughnessy made derogatory comments regarding Spanish speakers to Ms. Caban in front of other crew members. Ms. Shaughnessy chastised Ms. Caban throughout the flight and directed her to complete additional duties. Ms. Caban submitted a complaint to Delta, but again management did not respond.

34.

The problems with other flight attendants persisted. Ms. Caban received a disciplinary "write up" from a coworker stating they had "heard about her." She had her purse and wallet stolen because coworkers would not allow her to properly store those items during flight. She was criticized for not wearing hose as part of her uniform, although she had been granted a medical accommodation due to a skin allergy.

35.

On or about March 16, 2010, Delta manager Robert Waples removed Roberta Caban from flight status pending fitness-for-duty evaluation.

36.

On or about March 24, 2010, despite being cleared for duty and assigned to a flight by Delta Scheduling, Delta removed Ms. Caban from the scheduled flight and required that she undergo additional fitness-for-duty evaluations.

37.

On April 17, 2010, after completing and passing physical and mental evaluations, Ms. Caban was again scheduled for duty and then placed on restricted duty and required to undergo further evaluation. The examining physician

inquired into the prior occurrences in connection with Ms. Caban's pending EEOC charge.

38.

Despite being cleared for duty numerous times, Ms. Caban remained on constructive suspension without pay from March 16, 2010, until May 5, 2010.

39.

On or about May 5, 2010, Ms. Caban was placed on final probation for a minimum of six months, preventing her from receiving salary increases, educational assistance, and opportunities to bid on other positions.

40.

Delta refused to allow Ms. Caban to work as part of the "special projects" team, despite the fact that Ms. Caban possessed the requisite knowledge, skills, experience, and expertise.

41.

Ms. Caban followed the chain of command and complained to Delta managers about her mistreatment.

42.

From 2008 to present, Delta has refused to address safety violations identified by Ms. Caban.

43.

Ms. Caban complained about her employment problems to Delta Chief Executive Officer Richard Anderson. Ms. Caban also sent a package of materials about her discrimination to the Delta Board of Directors.

44.

It is no coincidence that Ms. Caban was subjected to random spot appearance checks and random drug tests after filing discrimination complaints against Delta with the EEOC.

45.

Also, Ms. Caban's Conflict Resolution Process ("CRP") dispute, an appeal of her 2010 constructive suspension, has been seriously delayed during the pendency of her EEOC investigation against Delta.

46.

The EEOC issued Notices of Suit Rights on September 20, 2010. *See* Exh. A-B.

## Count I
## National Origin Discrimination

47.

Plaintiff Roberta Caban is a member of a protected group based upon her national origin. Ms. Caban is of Latina ethnicity and background. Her physical characteristics and accent are associated with Latina descent.

48.

Ms. Caban was treated differently than her coworkers based upon her Latina national origin. She was suspended without pay during the investigation of Cheryl Euler's assault upon her, which effectively amounts to disparate treatment because Cheryl Euler – who admitted grabbing Ms. Caban's arm – received no harsher suspension. During the suspension, Ms. Caban lost her scheduled flights, whereas her non-Latina coworker did not.

49.

Ms. Caban was subjected to unwanted harassment by her coworkers, based upon her national origin, ethnicity, background, and physical characteristics and accent associated therewith. She was harassed for being a "language of destination" flight attendant, subjected to disparaging remarks regarding Spanish speakers, and referred to with derogatory remarks.

50.

The harassment Ms. Caban endured was sufficiently severe and pervasive so as to affect a term, condition, or privilege of employment. Ms. Caban has been forced to endure ongoing harassment as a part of her employment with Delta.

51.

Delta knew or should have known about the harassment of Ms. Caban but failed to take prompt, corrective action. Delta managers still have not addressed the ongoing harassment of Ms. Caban as a "language of destination" flight attendant.

52.

Plaintiff Roberta Caban brings Count I under 42 U.S.C. § 2000e-2(a)(1) to recover for unlawful discrimination based upon national origin.

**Count II**
**Sex-Based Discrimination**

53.

Plaintiff Roberta Caban is a member of a protected group based upon her sex. She is a female.

54.

Ms. Caban was treated differently than coworkers based upon her female sex. Delta did not fully cooperate with the investigation of Ms. Caban's sexual

assault, although upon information and belief Delta aided the pilot in his defense of the case.

55.

Ms. Caban was subjected to unwanted harassment by her coworkers, based upon her female sex. Ms. Caban was sexually assaulted by a Delta pilot. When she was called a "crazy woman," Delta did not remedy the harassment.

56.

The harassment Ms. Caban endured was sufficiently severe and pervasive so as to affect a term, condition, or privilege of employment. Ms. Caban is forced to endure ongoing harassment as a part of her employment with Delta.

57.

Delta knew or should have known about the harassment of Ms. Caban but failed to take prompt, corrective action. Delta managers still have not addressed the ongoing sexual harassment of Ms. Caban.

58.

Plaintiff Roberta Caban brings Count II under 42 U.S.C. § 2000e-2(a)(1) to recover for unlawful discrimination based upon sex.

**Count III**
**Retaliation**

59.

Plaintiff Roberta Caban engaged in protected activity through opposition to discrimination. She communicated to Delta her belief that its activity constituted unlawful discrimination under Title VII by filing and pursuing a complaint with Delta's "EO" department.

60.

Plaintiff Roberta Caban engaged in protected activity through participation in the statutory complaint process. She filed discrimination complaints with the Equal Employment Opportunity Commission.

61.

Ms. Caban had a good-faith belief that Delta subjected her to discrimination based upon national origin. She reasonably believed that she was treated differently because she is Latina.

62.

Ms. Caban had a good-faith belief that Delta subjected her to discrimination based upon sex. She reasonably believed that she was treated differently because she is a female.

63.

Defendant Delta, by and through its employees and agents, subjected Roberta Caban to adverse treatment that would be reasonably likely to deter protected activity. Delta suspended Ms. Caban without pay when she was the victim of an admitted assault. Delta did not cooperate with the investigation of the Ms. Caban's assault by a Delta pilot. Delta obstructed Ms. Caban's pursuit of a remedy for perceived discrimination. Delta created scheduling conflicts for Ms. Caban and disciplined her for those problems. Delta placed Ms. Caban on constructive suspension without pay by requiring repeated fitness-for-duty evaluations. Delta placed Ms. Caban on probation. Delta refused to allow Ms. Caban to work as part of the "special projects" team, despite the fact that Ms. Caban possessed the requisite knowledge, skills, experience, and expertise. Delta refused to address safety violations identified by Ms. Caban. Delta subjected Ms. Caban to "random" spot appearance checks and "random" drug testing.

64.

Ms. Caban's engagement in protected activity was the cause of the adverse action. The adverse actions occurred or began within the same time frame and/or concerned similar subject matter as the basis for Ms. Caban's complaints of discrimination.

65.

Plaintiff Roberta Caban brings Count III under 42 U.S.C. § 2000e-3(a) to recover for unlawful retaliation.

66.

Plaintiff Roberta Caban seeks a judgment against Defendant Delta on all claims and the following remedies as this Court deems appropriate:

1) Injunctive relief to:
    a) Provide sufficient remedial relief to make whole Roberta Caban for the loss she has suffered as a result of the discrimination and retaliation against her, and
    b) Take other appropriate nondiscriminatory measures to overcome the effects of the discrimination;
2) Reinstatement without probation status;
3) Back pay for unpaid suspensions and constructive suspensions;
4) Front pay;
5) Compensatory Damages;
6) Punitive Damages;
7) Attorneys' Fees; and
8) All other relief as justice may require.

67.

Pursuant to Fed. R. Civ. P 38, Plaintiff demands a jury trial on all issues so triable.

This 28th day of December, 2010.

Respectfully Submitted,

William Bradford Drummond
Ga. State Bar No. 426230
Law Offices of Robert R. Pagniello, P.C.
1400 Scott Blvd.
Decatur, GA 30030
(404) 373-5550 / fax (404) 373-3062
williambdrummond@gmail.com
*Attorney for Plaintiff*