IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ROBERTA CABAN,<br><br>Plaintiff,<br><br>v.<br><br>DELTA AIR LINES, INC.,<br>BRUCE BICKELMANN,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br>NO. 1:10-CV-4225-SCJ-ECS |

**ORDER, FINAL REPORT & RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on Defendant Delta Air Lines's motion for judgment on the pleadings, [Doc. 15], Plaintiff's first motion for leave to amend her complaint, [Doc. 18], and Plaintiff's second motion for leave to amend her complaint, [Doc. 27]. For the reasons discussed herein, it is **ORDERED** that Plaintiff's first and second motions for leave to amend her complaint, [Docs. 18 and 27], are **DENIED**; and it is **RECOMMENDED** that Defendant's[1] motion for judgment on the pleadings, [Doc. 15], be **GRANTED in part** and **DENIED in part**.

[1] For simplicity, unless otherwise indicated, the undersigned will refer to Defendant Delta Air Lines as "Defendant" throughout the remainder of this Order, Report and Recommendation.

## I.
## Background

### A. Factual Allegations

Roberta Caban ("Plaintiff") was employed as a flight attendant for Defendant Delta Air Lines until April of 2011. [Doc. 19 at 9]. Plaintiff, who is a Hispanic female, alleges that from March of 2008 through May of 2010, she was subjected to unwelcome harassment, primarily due to her national origin. See generally [Pl's Am. Compl.].[2]

Plaintiff alleges that on March 20, 2008, while she was working as a flight attendant on a leg from Atlanta to Brazil, coworker Cheryl Euler ("Euler") "forcibly grabbed and twisted [Plaintiff]'s arm . . . ." [Id. ¶ 14]. The next day, Plaintiff reported the incident to Delta managers, along with her belief that Euler "was discriminating against [Plaintiff] based upon [her] national origin, ethnicity, and position as a 'language of destination' flight attendant." [Id. ¶ 15]. That same day, after Euler allegedly "admitted she grabbed [Plaintiff]'s arm," both were "suspended without pay pending further investigation." [Id. ¶ 17].

[2] Based on this Court's denial of Plaintiff's first motion to amend her complaint, [Doc. 18], and Plaintiff's second motion to amend her complaint, [Doc. 27], as ordered infra, the undersigned refers to Plaintiff's amended complaint, [Doc. 2], throughout this Order, Report and Recommendation.



AO 72A
(Rev.8/82)

Plaintiff alleges that Delta pilot Bruce Bickelmann ("Bickelmann") "went to [Plaintiff]'s home to discuss" the suspension. [Pl's Am. Compl. ¶ 18]. Bickelmann allegedly "told [Plaintiff] that he had called a chief pilot and an attorney about her suspension problem," and "provided [Plaintiff] with his Delta Air Lines business card." [Id.]. Plaintiff also alleges that while Bickelmann was at Plaintiff's home, he "caused [her] to ingest . . . the 'date rape drug,'" and that "under the pretense of helping [Plaintiff] with her employment problem," he raped her "while she was intoxicated from GHB and unable to resist his advances." [Id. ¶ 19]. Plaintiff alleges that she reported this incident to the police, [id. ¶ 21], and anonymously to the Delta ethics hotline, [id. ¶ 20], but that Delta "failed or refused to cooperate with the investigation of [Bickelmann]." [Id. ¶ 22].

After the incident with Euler and the rape by Bickelmann, Plaintiff alleges that coworkers made derogatory comments towards her. For instance, Plaintiff alleges that Euler "spread rumors about [Plaintiff] to other Delta employees, including . . . a reference to [Plaintiff] as 'the Latino bipolar girl who likes to write people up," [Pl's Am. Compl. ¶ 25]; that coworker Maria Brito told Plaintiff, "I'm not Cheryl Euler - you're not going to say I hit you. You're just a 'Spic' who learned Portuguese," [id. ¶ 26]; that coworkers Susanne Dryzmala and Rebecca Lingerfelt "made derogatory



AO 72A
(Rev.8/82)

comments about Spanish speakers," [id. ¶ 35]; and that coworker Shaughnessy "made derogatory comments regarding Spanish speakers to [Plaintiff] in front of other crew members," [id. ¶ 36].

Plaintiff alleges that she complained to Delta management about these instances, but that management did not respond. [Id. ¶¶ 27, 30, 35, 36]. Plaintiff also alleges that she complained to management "that she felt a particular Delta safety video portrayed her in a stereotypical 'Latin maid' role and requested that she be removed from the video," [Id. ¶ 31], but received no response.

Plaintiff first filed an EEOC charge in December of 2008, [Pl's Am. Compl. ¶ 28], and amended her charge on November 20, 2009.[3] [Doc. 27-1 at 21]. She also alleges that she "complained about her employment problems to Delta Chief Executive Officer Richard Anderson," and "sent a package of materials about her discrimination to the Delta Board of Directors." [Pl's Am. Compl. ¶ 46].

Plaintiff alleges that her complaints resulted in retaliation by Delta: that Delta "failed to provide [Plaintiff] transportation to her accommodations," which caused her to be late and then

---

[3] Plaintiff did not give the exact date for her first amended EEOC charge until her second motion to amend her complaint, [Doc. 27-1 at 21], which the undersigned declines to allow, as discussed below. On a motion to dismiss, however, the Court may consider documents that are central to the plaintiff's claims and that are referenced in or attached to the plaintiff's complaint or referenced in the motion to dismiss. Brooks v. Blue Cross & Blue Shield, 116 F.3d 1364, 1369 (11th Cir. 1997).



AO 72A
(Rev.8/82)

reprimanded for being late, [id. ¶ 33]; that she "experienced numerous problems with scheduling, crew tracking, and transportation that were out of the ordinary," [id. ¶ 34]; that she was "subjected to random spot appearance checks and random drug tests after filing [the] . . . EEOC" complaint, [id. ¶ 47]; that she was "removed . . . from flight status pending fitness-for-duty evaluation," [id. ¶ 38]; that she was "again scheduled for duty and then placed on restricted duty and required to undergo further evaluation," [id. ¶ 39]; that she "remained on constructive suspension without pay" for nearly two months, "[d]espite being cleared for duty numerous times," [id. ¶ 41]; and that she was "placed on final probation for a minimum of six months, preventing her from receiving salary increases, educational assistance, and opportunities to bid on other positions," [id. ¶ 42].

**B. Lawsuit**

Plaintiff received her right to sue notice from the EEOC on September 30, 2010.[4] [Ex. A, Doc. 1-1]. On December 29, 2010, Plaintiff filed this civil action. [Doc. 1]. On January 4, 2011, Plaintiff filed a first amended complaint. [Doc. 2]. Plaintiff's

---

[4] Plaintiff's complaint alleges the receipt date was September 20, 2010, [Pl's Am. Compl. ¶ 49], but because the exhibit attached to Plaintiff's complaint shows the date clearly as September 30, 2010, [Ex. A, Doc. 1-1], the undersigned presumes that Plaintiff's complaint contains a typographical error.

amended complaint alleges national origin discrimination, gender discrimination, and retaliation under Title VII as to Delta; negligence as to Delta; sexual assault, rape, and battery as to Bickelmann; intentional infliction of emotional distress as to Bickelmann; and negligent infliction of emotional distress as to Bickelmann. [Id.].

On March 24, 2011, Defendant Delta Air Lines filed a motion for judgment on the pleadings, [Doc. 15], on all of Plaintiff's claims against Delta. Plaintiff filed a timely response, [Doc. 19], and Defendant Delta filed a reply, [Doc. 22]. On April 11, 2011, Plaintiff filed her first motion to amend her complaint. [Doc. 18]. Then, on May 27, 2011, Plaintiff filed her second motion to amend her complaint. [Doc. 27]. At this time, all of these matters are ripe for decision by the Court.

## II.
## Plaintiff's Motions to Amend

In her first motion to amend her complaint,[5] Plaintiff moved to amend her complaint "[t]o the extent that clarification of the factual details is necessary to avoid dismissal . . . ." [Doc. 18 at 1]. Defendant opposed Plaintiff's motion, arguing that Plaintiff's latest amended complaint was "virtually identical to

[5] Plaintiff previously filed her amended complaint, [Doc. 2], on January 4, 2011.



AO 72A
(Rev.8/82)

[Plaintiff's] . . . Amended Complaint," and "[t]o the extent it adds any new allegations, . . . they fail to salvage any claim under Twombly." [Doc. 22 at 2].

On May 27, 2011, before this Court could rule on Plaintiff's first motion to amend, Plaintiff filed her second motion to amend, seeking to amend her complaint for the third time. [Doc. 27]. In the motion, Plaintiff explains that her former counsel withdrew on April 26, 2011, and that she retained a new attorney the next day who "immediately proceeded with a review of all filed and pending matters . . . ." [Id. at 3]. Plaintiff argues that "[a]s a result of such review, including a review of the pending motion to amend the complaint, . . . it is vitally necessary and imperative to revise, update the facts occurring after the initial filing of the motion, supplement and substitute the proposed Second Amended Complaint to more properly clarify and fully reflect Plaintiff's claims before this Court . . . ." [Id.]. In particular, Plaintiff seeks (1) to clarify facts relating to her previously pled claims; and (2) to add a claim for "Race/Ethnicity Discrimination based on ethnicity, language, ancestry or national origin," [Doc. 27 at 7], under 42 U.S.C. § 1981.

Defendant Delta Air Lines and Defendant Bickelmann both oppose Plaintiff's second motion to amend. [Doc. 32] (Defendant Delta Air Lines's response); [Doc. 33] (Defendant Bickelmann's response).

Defendant Delta Air Lines argues that Plaintiff's motion should be denied because it is untimely, [Doc. 32 at 2 n.1] ("[T]he deadline for filing such amendments was set in the Scheduling Order for March 24, 2011."), and because allowing it would be futile, [id. at 2] ("[Plaintiff's] latest . . . version of her Complaint . . . fails to state a cause of action.").

Defendant Bickelmann argues that Plaintiff's motion should be denied for substantially the same reasons as Defendant Delta Air Lines. [Doc. 33 at 9]. Defendant Bickelmann also argues that allowing Plaintiff's third amended complaint would prejudice Defendant Bickelmann because he has to "continue to react to amended complaints . . . and new actions filed in different courts."[6] [Id. at 8]. Defendant Bickelmann argues that Plaintiff's motion should be denied because "[a]ll issues that would have been or could have been apparent to a reasonabl[y] prudent person should have been known to Caban and any one of her four different attorneys that she has had in the case thus far . . . ." [Id.].

After a defendant has filed an answer or a motion to dismiss, a plaintiff may file an amended complaint within twenty-one days

---

[6] Defendant Bickelmann states that "Plaintiff Caban fails to indicate that she initially filed suit in the State Court of Gwinnett County . . . on March 18, 2010 . . . ." [Doc. 33 at 1]. Defendant Delta states that Plaintiff dismissed the Gwinnett County lawsuit without prejudice after Delta filed a motion to dismiss. [Doc. 32 at 17 n.11].



AO 72A
(Rev.8/82)

after service of such answer or motion; otherwise, leave of court is required. Fed. R. Civ. P. 15(a). Amendments should be freely given, id. § (2), unless "a party's motion to amend is filed after the deadline for such motions, as delineated in the court's scheduling order . . . ." Smith v. Sch. Bd. of Orange Cnty., 487 F.3d 1361, 1366 (11th Cir. 2007). In such a case, Rule 16(b) governs and "the party must show good cause why leave to amend . . . should be granted." Id.; accord Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1419 (11th Cir. 1998).

Here, Plaintiff had until April 14, 2011 – twenty-one days after Defendant filed its March 24, 2011, motion for judgment on the pleadings – to file an amended complaint as a matter of right. Fed. R. Civ. P. 15(a). Plaintiff did not file an amendment within that time period, nor did she file an amendment within the 30-day time period for amendments provided for in the parties' Preliminary Report and Discovery Plan. [Doc. 9 at 6]. Under the Preliminary Report and Discovery Plan, as adopted by the Court, see [Doc. 10], the parties were required to file any amendments to their pleadings before March 24, 2011. Thus, because Plaintiff filed both her motions to amend her complaint outside of the time period under Federal Rule of Civil Procedure 15(a) and under the Preliminary Report and Discovery Plan, Plaintiff must show good cause as to why



AO 72A
(Rev.8/82)

she should be permitted to amend her complaint out of time. Smith, 487 F.3d at 1366.

Plaintiff's first motion to amend her complaint, filed April 11, 2011, [Doc. 18], is **DENIED**. In that motion, Plaintiff does not show good cause for amending her complaint. Plaintiff states only that "[t]o the extent that clarification of the factual details is necessary to avoid dismissal, justice requires that Plaintiff be afforded an opportunity to file a Second Amended Complaint." [Doc. 18 at 1]. Furthermore, Plaintiff's first motion to amend was superseded by her second motion to amend, addressed below.

Plaintiff's second motion to amend her complaint, [Doc. 27], is likewise **DENIED**. To the extent Plaintiff seeks to add new facts that occurred after the filing of Plaintiff's amended complaint,[7] Plaintiff has failed to show why she could not have amended her complaint before April 14, 2011, the twenty-one day period allowed under Federal Rule of Civil Procedure 15(a). Sosa, 133 F.3d at 1419 (holding no good cause was shown where plaintiff's failure to comply with the deadlines "resulted from a lack of diligence in pursuing her claim" because the information in plaintiff's proposed amendment was available to plaintiff before the amendments deadline). Further,

---

[7] For instance, Plaintiff states that "since the filing of the . . . amended complaint, from late February to April 4, 2011, Plaintiff was suspended, placed on probation, denied her pay during the suspension, and terminated by Delta . . . ." [Doc. 27 at 10].

to the extent that Plaintiff seeks to add a new cause of action under Section 1981, Plaintiff does not show good cause as to why this amendment should be allowed more than seven months after Plaintiff initiated this lawsuit. See id. at 1418; see also Koger v. Texaco, Inc., et al., 4:04-cv-205-JEC-WEJ, [Doc. 67] (order denying plaintiff's motion to amend complaint because plaintiff "obviously knew in May 2004 when she filed her suit . . . that she had been forced to work hours for which she had not been paid," but plaintiff "waited until June 2006 to seek to add these FLSA allegations to her lawsuit").

For these reasons, Plaintiff has failed to show good cause to amend her complaint. Accordingly, Plaintiff's first and second motions to amend her complaint, [Docs. 18 and 27], are **DENIED**.

## III.
## Defendant Delta Air Lines's Motion for Judgment on the Pleadings

Defendant Delta Air Lines brings a motion for judgment on the pleadings on Plaintiff's Title VII national origin discrimination claim; Plaintiff's gender discrimination claim; Plaintiff's retaliation claims; and Plaintiff's state law negligence claim. [Doc. 15].

### A. Standard of Review

Judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is appropriate where no issue of material fact remains



AO 72A
(Rev.8/82)

unresolved and the moving party is entitled to judgment as a matter of law. Douglas Asphalt Co. v. Qore, Inc., 541 F.3d 1269, 1273 (11th Cir. 2008) (internal citation omitted). In reviewing a motion for judgment on the pleadings under Rule 12(c), the Court uses the same standard it uses when reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6). Inspiration Yacht Charters, Inc. v. Inspiration Yacht Charters, II, No. 09-CIV-20472, 2010 WL 1737110 at *1 (S.D. Fla. Apr. 27, 2010) (internal citation omitted). Although a plaintiff's complaint need not provide detailed factual allegations, the basis for relief in the complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id.; accord Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1261 (11th Cir. 2009) ("A complaint must state a plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'") (internal citation omitted); Ashcroft v. Iqbal, 556 U.S. ___, 129 S.Ct. 1937, 1940-41 (2009) ("When there are well-pleaded factual allegations,

a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.”).

**B. Plaintiff’s Title VII Claims**

**1. National Origin Discrimination Claim (Count I)**

**a. Timeliness**

The undersigned finds that Plaintiff’s EEOC charge for Plaintiff’s national origin hostile environment claim was timely filed to exhaust Plaintiff’s national origin hostile work environment claim because at least one act alleged to be part of the same unlawful employment practice fell within the 180-day time period. Nat’l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002). The chronology of Plaintiff’s complaint makes it apparent that at least two acts alleged to be part of the hostile environment - Euler’s reference to Plaintiff as “the Latino bipolar girl” and Brito’s comment that Plaintiff was “just a ‘Spic’ who learned Portuguese” - occurred within 180 days of Plaintiff’s EEOC filing on December 18, 2008. [Pl’s Am. Compl. ¶¶ 24-28].

**b. Sufficiency**

Plaintiff alleges that she was subjected to harassment in violation of Title VII based on her national origin. [Pl’s Am. Compl. ¶ 56]. Plaintiff’s national origin harassment claims are based on the following alleged incidents: Plaintiff’s coworkers harassed her for being a so-called “language of destination” flight



AO 72A
(Rev.8/82)

attendant and subjected her to "disparaging remarks regarding Spanish speakers," [id. ¶ 53]; Euler once called Plaintiff "the Latino bipolar girl who likes to write people up," [id. ¶ 25]; Brito said to Plaintiff, "[y]ou're just a 'Spic' who learned Portuguese," [id. ¶ 26]; and Plaintiff was portrayed in a stereotypical way as a "Latin maid" in a Delta safety video, [id. ¶ 31].

To establish a hostile work environment claim under Title VII, a plaintiff must show that (1) she belongs to a protected group; (2) she has been subjected to unwanted harassment; (3) the harassment was based on her membership in the protected group; (4) the harassment was severe or pervasive enough to alter the terms and conditions of her employment; and (5) the employer may be held liable under either a theory of vicarious or of direct liability. Bryant v. Jones, 575 F.3d 1281, 1296 (11th Cir. 2009) (internal citation omitted). At the motion for judgment on the pleadings stage, a "plaintiff need not plead a prima facie case of discrimination," Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-11, 515 (2002), but still must satisfy the aforementioned pleading requirements of Twombly and Iqbal.

Whether harassing conduct is sufficiently severe or pervasive is determined by judging the totality of the circumstances and includes looking at (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct was physically



AO 72A
(Rev.8/82)

threatening or humiliating; and (4) whether the conduct unreasonably interfered with the employee's work performance. Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 808 (11th Cir. 2010) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-23 (1993)); see also Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999).

Defendant argues that the alleged harassment was not severe or pervasive and that Delta may not be held liable. [Doc. 15-1 at 14-17]. In particular, Defendant argues that the alleged harassment was not severe or pervasive because "the frequency of the alleged conduct was very low and the alleged conduct was not severe, physically threatening, or sufficiently humiliating," and Plaintiff "was at no time prevented from performing her duties because of these isolated events." [Id. at 15-16]. Defendant also argues there is no basis for holding Delta liable "[b]ecause [Plaintiff's coworkers] are alleged to have made only one comment each," and, therefore, "it must be presumed that no further slurs occurred from either of them after Plaintiff allegedly reported these first-time slurs from each." [Id. at 17].

Plaintiff alleges several examples of national origin harassment: Brito's telling Plaintiff "You're just a 'spic' who learned Portuguese," [Pl's Am. Compl. ¶ 26]; Euler's calling Plaintiff "the Latino bipolar girl who likes to write people up," [id. ¶ 25]; Plaintiff's being portrayed in a stereotypical way as



AO 72A
(Rev.8/82)

a “Latina maid” in a Delta safety video and being called a “crazy woman,” [id. ¶ 31]; and Delta on-board leaders’ making derogatory comments about Spanish speakers on at least two occasions, [id. ¶¶ 35-36]. Plaintiff alleges that the harassment she endured was severe and pervasive at Delta. [Pl’s Am. Compl. ¶ 53]. She submits that her harassment was known to Delta and that Delta failed to take prompt, corrective action. [Id. ¶ 55].The undersigned concludes that at the pleading stage, these and other allegations of the amended complaint, taken as true, are sufficient to state a claim under Title VII for hostile work environment harassment based upon national origin.

All that is required under Rule 8 to state a claim is a short, plain statement that “possess[es] enough heft to show that the pleader is entitled to relief.” Twombly, 550 U.S. at 557 (internal quotation omitted). Plaintiff has met that standard in her complaint by pleading facts tending to show that she was subjected to hostile comments on repeated occasions related to her national origin; that some of the comments involved ethnic slurs directed at her nationality; that at least one of the incidents involved a physical altercation with another employee; and that an atmosphere of alleged discrimination was severe and pervasive and affected her ability to perform her job as a flight attendant. Plaintiff’s allegations of national origin discrimination extend beyond the insufficient



AO 72A
(Rev.8/82)

"threadbare recitals of a cause of actions's elements." Iqbal, 129 S.Ct. at 1940. The undersigned therefore **RECOMMENDS** that Defendant's motion for judgment on the pleadings be **DENIED** as to Plaintiff's national origin discrimination claim under Title VII.

### 2. Gender Discrimination (Count II)

#### a. Sexually Hostile Work Environment Claim

Under Title VII, a plaintiff establishes a prima facie hostile work environment gender discrimination claim by showing that (1) she belongs to a protected group; (2) she has been subjected to unwanted harassment; (3) the harassment was based on her membership in the protected group; (4) the harassment was severe or pervasive enough to alter the terms and conditions of her employment; and (5) the employer may be held liable under either a theory of vicarious or of direct liability. Reeves, 594 F.3d at 808 (citing Mendoza, 195 F.3d at 1245).[8]

Plaintiff has identified only two gender-related acts to support her claim that she was subjected to a sexually hostile working environment: (1) the alleged rape of Plaintiff by Bickelmann

[8] As discussed, to survive a motion for judgment on the pleadings, a "plaintiff need not plead a prima facie case of discrimination," Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-11, 515 (2002), but still must satisfy the aforementioned pleading requirements of Twombly.



AO 72A
(Rev.8/82)

in March of 2008, and (2) the comment by Babb in October of 2009 that Plaintiff was a "crazy woman." [Doc. 19 at 12].[9]

Even taking Plaintiff's allegations as true, the isolated incident of coworker Babb's "crazy woman" comment falls well short of the standard required for severe or pervasive conduct. See Carrio v. Apollo Grp., 1:07-cv-1814-BBM, 2009 WL 2460983 at 19 (N.D. Ga. Aug. 7, 2009) (collecting Eleventh Circuit cases regarding severe or pervasive requirement); Welch v. Delta Air Lines, Inc., 978 F.Supp. 1133, 1150-51 (N.D. Ga. 1997) (holding that the comment "black boy" was not severe because "the mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII") (internal quotation and citation omitted); Robertson v. Ga. Dep't of Corr., 725 F. Supp. 533, 538-39 (S.D. Ga. 1989) (finding that comments of "ole boy" and "affirmative action boy" were insufficient for a hostile work environment claim). Further,

[9] Plaintiff filed her initial EEOC charge in December of 2008, more than 180 days after the alleged rape by Bickelmann occurred. No other act constituting part of a sexually hostile environment has been alleged within the 180 day period prior to this charge. Accordingly, any gender discrimination or sexually hostile environment claim based upon the alleged rape by Bickelmann, standing alone, is time-barred. See Morgan, 536 U.S. at 122. The other alleged act of gender bias - the "crazy woman" comment in 2009 by Babb, made after the initial EEOC charge was filed - fails to support a claim of sexually hostile environment, as will be addressed below.

Plaintiff has provided no indication that this comment was motivated by Plaintiff's gender, other than the use of the term "woman." Sinaltrainal, 578 F.3d at 1268-69 (holding that conclusory allegations based upon "information and belief" are insufficient to state a claim for relief). Finally, even if the "crazy woman" comment were sufficient for a hostile work environment claim, the only other act was the alleged rape by Bickelmann, which occurred one-and-a-half years earlier, involved a different harasser, and was apparently unrelated. See Welch, 978 F.Supp. at 1150 (N.D. Ga. 1997) (holding that "several unrelated" incidents were not severe even though they may have "engender[ed] offensive feelings"). Accordingly, it is **RECOMMENDED** that Plaintiff's claim for hostile work environment gender discrimination based upon coworker Babb's comment be **DISMISSED**. See Twombly, 550 U.S. at 558 (holding that dismissal of a complaint is appropriate "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief").

**b. Disparate Treatment Gender Discrimination Claim**

Plaintiff alleges that she "was treated differently than coworkers based upon her female sex," in violation of Title VII, when Delta "did not fully cooperate with the investigation of [Plaintiff]'s sexual assault." [Pl's Am. Compl. ¶ 59]. Plaintiff argues that Delta's "'sid[ing]' with the male employee . . . amounts



AO 72A
(Rev.8/82)

to discriminatory treatment of female employee, [Plaintiff].” [Doc. 19 at 15]. This is Plaintiff’s only allegation in the complaint of disparate treatment based on sex.

Defendant argues that Plaintiff’s gender discrimination claim should be dismissed because even if Delta had not cooperated in the police investigation of Defendant Bickelmann, “such an inaction is not an adverse action towards Plaintiff that is actionable under Title VII” and “there is certainly no Title VII obligation for an employer to support an employee’s criminal report . . . of another employee’s alleged off duty conduct at her home.” [Doc. 15-1 at 17-18].

Defendant is correct that Delta’s alleged failure to investigate Defendant Bickelmann cannot amount to an adverse action under Title VII because “the plaintiff herself must suffer an adverse employment” action in order to sustain a claim. Entrekin v. City of Panama City, Fla., 376 Fed. Appx. 987, 995 (11th Cir. 2010) (“The [employer]’s failure to sustain [the plaintiff]’s complaint against Leonard and failure to investigate [the plaintiff]’s complaint against Taylor are not adverse employment actions, because these actions were not taken against [the plaintiff] herself.”). Thus, because this is the only allegation of allegedly disparate adverse action, Plaintiff has failed to plead any facts stating a plausible claim for disparate treatment. Further, even after the



AO 72A
(Rev.8/82)

deficiencies in Plaintiff's complaint were pointed out to her in Defendant's motion for judgment on the pleadings, Plaintiff did not amend her complaint within the twenty-one day period allowed under Federal Rule of Civil Procedure 15(a) to address the deficiencies. Accordingly, is **RECOMMENDED** that Defendant's motion for judgment on the pleadings be **GRANTED** as to Plaintiff's disparate treatment claim under Title VII.

**3. Retaliation (Count III)**

Plaintiff brings a claim under 42 U.S.C. § 2000e-3(a) for retaliation, alleging that Plaintiff's "engagement in protected activity was the cause of adverse action." [Pl's Am. Compl. ¶¶ 70-71]. In particular, Plaintiff alleges that Defendant suspended Plaintiff without pay after Plaintiff reported that she was assaulted by Bickelmann; Defendant did not cooperate with the police investigation of her complaint against Bickelmann; Defendant created scheduling conflicts for Plaintiff; Defendant placed Plaintiff on constructive suspension without pay by requiring repeated fitness-for-duty evaluations after she made complaints of discrimination; Defendant refused to allow Plaintiff to work as part of a 'special projects' team after she complained; Defendant refused to address safety violations raised by Plaintiff; and Defendant subjected Plaintiff to 'random' spot appearance checks and drug testing in retaliation for her protected activity. [Id. ¶ 69]. Plaintiff argues



AO 72A
(Rev.8/82)

that all of these actions were retaliatory because they "occurred or began within the same time frame and/or concerned similar subject matter as the basis for [Plaintiff]'s complaints of discrimination." [Id. ¶ 70].

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) she engaged in statutorily protected conduct; (2) she was adversely affected by an employment decision; and (3) a causal connection existed between the conduct and the adverse employment decision. Drago v. Jenne, 453 F.3d 1301, 1307 (11th Cir. 2006) (internal citations omitted).[10]

**a. Statutorily Protected Conduct**

Under 42 U.S.C. § 2000e-(3)(a), a plaintiff must first show that she engaged in statutorily protected conduct, which includes opposing an employer's unlawful practice ("the opposition clause"), or making a charge, testifying, assisting, or participating in an investigation, proceeding, or hearing ("the participation clause"). 42 U.S.C. § 2000e-(3)(a); see also Hudson v. Norfolk S. R.R. Co., 209 F. Supp. 2d 1301, 1308 (N.D. Ga. 2001).

Defendant argues as follows:

---

[10] As discussed, at the motion for judgment on the pleadings stage, a "plaintiff need not plead a prima facie case of discrimination," Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-11, 515 (2002), but still must satisfy the aforementioned pleading requirements of Twombly and Iqbal.



AO 72A
(Rev.8/82)

> Presumably because she realizes it was filed well more than a year before her alleged retaliation, Plaintiff does not claim her Title VII retaliation claims are based on the protected participation conduct of the filing of her December 2008 EEOC Charge. Instead, Plaintiff alleges her only relevant protected conduct was her internal complaints to Delta . . . .

[Doc. 22 at 11]. Therefore, Defendant argues that Plaintiff is limited to proceeding under the opposition clause. [Id.].

Contrary to Defendant's contention, Plaintiff is not limited to proceeding only under the opposition clause. Plaintiff specifically referenced her EEOC charge in her amended complaint, alleging in her retaliation count (Count III) that she "engaged in protected activity through participation in the statutory complaint process. She filed discrimination complaints with the Equal Employment Opportunity Commission." [Pl's Am. Compl. ¶ 66].[11] She also alleged that "[i]t is no coincidence that [Plaintiff] was subjected to random spot appearance checks and random drug tests after filing discrimination complaints against Delta with the EEOC." [Id. ¶ 47].[12]

---

[11] Plaintiff filed a discrimination charge with the EEOC on December 18, 2008. [Pl's Am. Compl. ¶ 28], and amended this charge on November 20, 2009. [Doc. 27-1 at 21].

[12] Plaintiff also specifically referenced her EEOC charge in the retaliation section of her response to Defendant's motion for judgment on the pleadings. [Doc. 19 at 19] ("When [Plaintiff] was required to undergo further fitness-for-duty evaluation, the examining physician specifically inquired about [Plaintiff]'s



AO 72A
(Rev.8/82)

The facts alleged in Plaintiff's complaint also state a claim for relief under the opposition clause based upon Plaintiff's internal complaints to Delta management. E.g., [Pl's Am. Compl. ¶ 15] (reporting incident with Euler to managers); [id. ¶ 20] (reporting Bickelmann to Delta's ethics hotline); [id. ¶ 27] (reporting problems with coworkers Euler and Brito to supervisors); [id. ¶ 31] (complaining to management about her "Latin maid" role in the safety video); [id. ¶ 34] (reporting scheduling problems to management); [id. ¶¶ 35, 36] (submitting complaints regarding coworkers' comments to management); [id. ¶ 46] (complaining to Delta CEO and Board of Directors).

Accordingly, because Plaintiff alleges that she made internal complaints of discrimination covered under Title VII and filed a charge of discrimination with the EEOC, she can make out the first element of the prima facie case for retaliation. See Robinson v. Venus Thread, 3:08-cv-65-JTC-ECS, [Doc. 36 at 14] (Magistrate Report and Recommendation) ("[B]y simply filing a complaint with the EEOC, Plaintiff can make out the first element of the prima facie case for retaliation."), adopted by [Doc. 37] (December 31, 2009).

---

pending EEOC charge.").

**b. Adverse Action**

Having found that Plaintiff engaged in statutorily protected activity, the next inquiry is whether any of the following allegations amount to adverse actions for purposes of Plaintiff's retaliation claims:

> (1) suspending Plaintiff without pay after Euler assaulted Plaintiff; (2) refusing to cooperate with the police investigation of Bickelmann; (3) obstructing Plaintiff's pursuit of a remedy for perceived discrimination; (4) creating scheduling conflicts and disciplining Plaintiff for those scheduling conflicts; (5) placing Plaintiff on constructive suspension without pay by requiring repeated fitness-for-duty evaluations; (6) placing Plaintiff on probation; (7) refusing to allowing Plaintiff to work on the 'special projects' team; (8) refusing to address safety violations raised by Plaintiff; (9) subjecting Plaintiff to random spot appearance checks and drug testing.

[Pl's Am. Compl. ¶ 69].

A plaintiff suffers an adverse action for purposes of a retaliation claim when a "reasonable person in the plaintiff's position, considering 'all the circumstances,'" would find the action materially adverse. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 72 (2006) (internal citation omitted); accord Criswell v. Intellirisk Mgmt. Corp., Inc., 286 Fed. Appx. 660, 663 (11th Cir. 2008) (holding that a plaintiff experiences an adverse action when she undergoes a "significant change in employment status, such as . . . reassignment with significantly different responsibilities, or a decision causing a significant change in

benefits") (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)). A reasonable employee is said to have found the challenged action materially adverse when the challenged action "well might have dissuaded [the employee] from making or supporting a charge of discrimination." Burlington, 548 U.S. at 68 (internal citation and quotation omitted); accord Carter v. Univ. of S. Ala. Children's & Women's Hosp., 510 F. Supp. 2d 596, 609 (S.D. Ala. 2007) (internal citation and quotation omitted).

Defendant argues that, with the exception of the final suspension, none of the above alleged events constituted adverse actions because the actions were either "an employer inaction or action directed at another employee," or were "at most 'petty slights' and 'trivial' events that are not materially adverse actions as a matter of law." [Doc. 15-1 at 22-23]. Defendant cites Entrekin v. City of Panama City, Fla., 376 Fed. Appx. 987 (11th Cir. 2010), for the proposition that "scheduling difficulties, refusal to allow schedule change, reassignment and one-day suspension [are] all at most 'trivial slights.'" [Id. at 23].

Contrary to Defendant's argument, Plaintiff has pleaded facts sufficient to state a claim that she suffered adverse actions. Plaintiff alleges that "despite being cleared for duty and assigned to a flight by Delta Scheduling, Delta removed [Plaintiff] from the scheduled flight and required that she undergo . . . fitness-for-



AO 72A
(Rev.8/82)

duty evaluations," grounding Plaintiff for nearly two months. [Pl's Am. Compl. ¶¶ 39, 41]. Plaintiff also alleges that she was placed on final probation "for a minimum of six months, preventing her from receiving salary increases, educational assistance, and opportunities to bid on other positions." [Id. ¶ 42]. The undersigned finds that these events could constitute materially adverse actions, because these actions might have dissuaded a reasonable person from making or supporting a charge of discrimination. See Carter, 510 F. Supp. 2d at 609; see also Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1268-69 (11th Cir. 2010) ("The loss of salary for a period of months, weeks, or days is a 'materially adverse' action which 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination") (internal citations and quotations omitted).[13]

**c. Causal Connection**

The final step in the inquiry is whether Plaintiff has alleged a sufficient causal connection between the protected activity and the adverse action. This element has also been stated as whether "the protected activity and the adverse action were not wholly

---

[13] Defendant's reliance on Entrekin, which referred to a one-day suspension as a "trivial slight," is also misplaced because even one-day suspensions or less can be materially adverse. Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453 (11th Cir. 1998); Poole v. City of Plantation, Fla., 05-61698-CIV, 2010 WL 4063728 (S.D. Fla. Oct. 14, 2010).



AO 72A
(Rev.8/82)

unrelated." Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 590 (11th Cir. 2000) (internal quotations and citations omitted). To plead facts tending to establish such a connection, a plaintiff "must generally show that the decision maker was aware of the protected conduct at the time of the adverse [or retaliatory] action," Brungart v. Bellsouth Telecomm., Inc., 231 F.3d 791, 799 (11th Cir. 2000) (internal citation omitted). Further, a plaintiff may show a causal connection by establishing that the protected activity and the adverse action shared a "close temporal proximity." Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) (internal citation omitted). But if no other evidence tending to show causation exists, and "there is a substantial delay between the protected expression and the adverse action," a claim for retaliation fails as a matter of law. Id. (holding that a three-month delay is not temporally close enough to show causation); accord Diaz v. Miami Dade Cnty., No. 09-21856-CIV, 2010 WL 3927751 at *8 (S.D. Fla. Aug. 17, 2010) ("[I]f the only evidence of causation is temporal proximity, then temporal proximity must be 'very close.'") (internal citation and quotation omitted).

Defendant argues that Plaintiff has failed to plead facts sufficient to show a causal connection because Plaintiff has either failed to plead facts showing that the individuals involved with

some of the incidents[14] knew that Plaintiff had filed an EEOC charge or because Plaintiff has failed to plead facts establishing causation between the two possibly materially retaliatory events and her December 18, 2008, EEOC charge.[15] [Doc. 15-1 at 23-24].

Contrary to Defendant's arguments, the undersigned concludes that Plaintiff has pled facts sufficient to state a claim for causation based upon temporal proximity. The fact that more than three months elapsed between the protected activity and the alleged retaliatory action does not foreclose a finding of causal connection. An employer's knowledge and temporal closeness is required to show causal connection, but only when a plaintiff relies solely on temporal proximity is a very short time period required. Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) ("[M]ere temporal proximity between . . . knowledge of protected activity and an adverse . . . action . . . must be 'very close.'") (internal citations omitted); see also Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004) (same).[16]

---

[14] Specifically, Defendant refers to "her scheduling, her drug test, her appearance check, or her oral reprimands (let alone whoever allegedly stole her purse) . . . ." [Doc. 15-1 at 23].

[15] The two events Defendant refers to are the fitness for duty examinations from March 16 through May 5, 2010, and the May 5, 2010, disciplinary probation. [Doc. 15-1 at 23].

[16] Further, a "chain of allegedly retaliatory activities," as is alleged here, lengthens the permissible time period. McCulley



AO 72A
(Rev.8/82)

Construing Plaintiff's allegations as true at this stage, Plaintiff has pled facts sufficient to show that Delta knew of her protected opposition and participation activities. See [Pl's Am. Compl. ¶ 25] (Euler's comment that Plaintiff was "the Latino bipolar girl who likes to write people up"); [id. ¶ 26] (Brito's comment to Plaintiff that "I'm not Cheryl Euler - you're not going to say I hit you"); [id. ¶ 37] (coworker's comment that he or she had "heard about her"); [id. ¶ 40] (physician's inquiry into Plaintiff's EEOC charge). See also Iqbal, 129 S.Ct. at 1940-41 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").

Further, Plaintiff filed her first EEOC charge in December of 2008, [Pl's Am. Compl. ¶ 28], and amended the charge on November 20, 2009. [Doc. 27-1 at 21]. Plaintiff alleges retaliatory conduct in December of 2009 (transportation problems with Delta), [Pl's Am. Compl. ¶ 33]; in December of 2009 and January of 2010 (scheduling problems), [id. ¶ 34]; in March of 2010 (fitness-for-duty evaluations), [id. ¶¶ 38-41]; and May of 2010 (probation), [id.

---

v. Allstates Tech. Servs., 04-0115-WS-B, 2005 WL 1475314 at *6 (S.D. Ala. June 21, 2005). Even allegedly retaliatory conduct occurring more than one year after the filing of an EEOC charge may establish a causal connection. Bass v. Bd. of Cnty. Comm'rs, Orange Cnty., Fla., 256 F.3d 1095, 1117-19 (11th Cir. 2001).

¶ 42]. Plaintiff therefore has pled a short time period between her complaints and the alleged retaliation. See Thomas, 506 F.3d at 1364. This is sufficient for purposes of a motion to dismiss on the pleadings.

**d. Conclusion**

Accordingly, having found that Plaintiff has pled facts sufficient to state a claim for retaliation under Title VII, the undersigned **RECOMMENDS** that Defendant's motion for judgment on the pleadings be **DENIED** on this ground.

**C. Negligence**

Defendant argues that Plaintiff's state law claim for negligence against Delta relating to Bickelmann's alleged rape of Plaintiff should be dismissed because neither respondeat superior nor negligent retention is a viable theory of liability against Delta. [Doc. 15-1 at 9-11].[17] Defendant argues that Delta cannot be liable under respondeat superior because Bickelmann, who acted "for purely personal reasons," was not acting in furtherance of Delta's

---

[17] Plaintiff's response to Defendant's motion for judgment on the pleadings states that "Delta may . . . be held liable under the principle of respondeat superior," and does not address negligent retention. [Doc. 19 at 21]. Plaintiff's negligence claim (Count IV), however, alludes to both negligent retention, [Pl's Am. Compl. ¶ 76], and respondeat superior, [id. ¶ 79]. Accordingly, the undersigned addresses both negligent retention and respondeat superior.

business and was not acting in the scope of Delta's business when he allegedly raped Plaintiff. [Id. at 9].

Defendant also argues that Delta cannot be liable for negligence under a negligent retention theory because Plaintiff "alleges no fact that could plausibly support a conclusion that[] Delta knew or reasonably should have known of some incompetency of Bickelmann for the job of pilot that caused Plaintiff's alleged injury on March 21, 2008." [Id. at 11]. Defendant argues that "[t]here could be no causal connection between any incompetency by Bickelmann as a Delta Pilot and the events at Plaintiff's home," and that even if Delta had reason to believe Bickelmann was not a competent pilot, such a belief "could not have caused him to sexually assault Plaintiff at her home." [Id.].

Under Georgia law, an employer cannot be held liable for its employees' torts under a respondeat superior theory unless those torts were committed within the scope of the employer's business and in furtherance of the employer's business. Middlebrooks v. Hillcrest Foods, Inc., 256 F.3d 1241, 1247 (11th Cir. 2001) (applying Georgia law); Morgan, 64 F. Supp. 2d at 1317 (internal citations and quotations omitted). Sexual harassment is typically considered a "personal act[] taken outside the scope of employment. Morgan, 64 F. Supp. 2d at 1316 (internal citations omitted). But if an employer knows or should have known of an employee's behavior and does not

correct the employee's behavior, the employer "essentially ratifies [the] employee's acts and may be held liable therefor" under a respondeat superior theory. Id. (internal citations and quotations omitted); accord Mears v. Gulfstream Aerospace Corp., 225 Ga. App. 636, 484 S.E. 2d 659, 665 (1997) ("If the employer knows about the employee's conduct and responds inadequately, . . . liability for intentional infliction of emotional distress may arise."). Similarly, a negligent retention claim also requires that the employer knew or should have known of the employee's tendencies that are alleged to have resulted in the plaintiff's injuries. Morgan, 64 F. Supp. 2d at 1317 (internal citations and quotations omitted).

In this case, Plaintiff's complaint fails to state a claim for respondeat superior or negligent retention. In her complaint, Plaintiff alleges that "Delta knew or should have known that Bickelmann had a propensity to endanger the safety of his coworkers" because "Defendant Bickelmann had been placed on multiple Delta pilots' 'Avoid Lists,' indicating a preference that the pilots not fly with Bickelmann under any circumstances." [Pl's Am. Compl. ¶¶ 76, 78]. Plaintiff's complaint in no way alleges that Delta knew or should have known that Bickelmann had a propensity towards sexual misconduct, namely rape or assault - only that Bickelmann "had a propensity to endanger the safety of his coworkers." Without more, Plaintiff's complaint does not state a claim for relief under a

respondeat superior theory, see Morgan, 64 F. Supp. 2d at 1316, nor does it state a claim for relief under a negligent retention theory, see Munroe v. Univ. Health Servs., Inc., 277 Ga. 861, 863 (2004) (holding that an employer is negligent in retaining an employee when the employer knows or should have known of the employee's tendency towards the type of conduct alleged to have resulted in the plaintiff's injuries). Accordingly, the undersigned concludes that Defendant's motion for judgment on the pleadings should be **GRANTED** as to Plaintiff's negligence claim.

## IV.
## Conclusion

For the reasons discussed above, it is **ORDERED** that Plaintiff's first and second motions for leave to file an amended complaint, [Docs. 18 and 27], are **DENIED**; and it is **RECOMMENDED** that Defendant's motion for judgment on the pleadings, [Doc. 15], be **GRANTED in part** and **DENIED in part**. Specifically, the undersigned **RECOMMENDS** that Plaintiff's national origin claim (Count I), and retaliation claim (Count III), remain, and that Plaintiff's gender discrimination claim, (Count II), and negligence claims, (Count IV), be dismissed.

**SO ORDERED, REPORTED AND RECOMMENDED**, this 8th day of August, 2011.

s/ *E. Clayton Scofield*
E. CLAYTON SCOFIELD III
UNITED STATES MAGISTRATE JUDGE



AO 72A
(Rev.8/82)